Vincent J. Velardo (13610)
**LITCHFIELD CAVO LLP**
420 E. South Temple, Suite 510
Salt Lake City, Utah 84111
Phone (801) 797-1901
Facsimile (801) 384-0554
velardo@litchfieldcavo.com

Christopher J. Bannon *(Pro Hac Admission Pending)*
Nicole Miller *(Pro Hac Admission Pending)*
**ARONBERG GOLDGEHN DAVIS & GARMISA**
330 N. Wabash Avenue, Suite 1700
Chicago, IL 60611
(ph.) (312) 755-3175
(fax) (312) 222-6375
cbannon@agdglaw.com
nmiller@agdglaw.com

*Attorneys for Plaintiff Travelers Casualty and Surety Company of America*

_____

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GRIMMER DAVIS REVELLI & BALLIF, P.C.; GRIMMER & ASSOCIATES, P.C.; MATHEW GRIMMER; JACOB DAVIS and GEORGIA NOEL INMAN,<br><br>Defendants. | **COMPLAINT FOR RESCISSION AND DECLARATORY JUDGMENT**<br><br>Case No. 2:19-cv-00597-DBP |

Travelers Casualty and Surety Company of America ("Travelers"), for its Complaint for

Rescission and Declaratory Judgment against defendants Grimmer, Davis, Revelli & Ballif,

P.C. ("GDRB"), Grimmer & Associates, P.C. ("G&A"), Mathew Grimmer ("Grimmer"), Jacob Davis ("Davis") and Georgia Noel Inman ("Inman"), alleges as follows:

## NATURE OF THIS ACTION

1. Travelers brings this lawsuit to (1) rescind a professional liability insurance policy Travelers issued to GDRB (the "Policy") and (2) obtain a judicial determination and declaration, pursuant to 28 U.S.C. §§ 2201 and 2202, with respect to the rights and obligations of the parties with respect to a lawsuit Inman filed against GDRB, G&A, Grimmer and Davis (collectively, the "Grimmer Parties") arising out of their legal representation of Inman (the "Inman Lawsuit").

2. Specifically, Travelers seeks to rescind the Policy on the basis of a material misrepresentation, omission, and incorrect statement in GDRB's written application for the Policy.

## PARTIES

3. Travelers is an insurance company incorporated under the laws of the State of Connecticut and has its principal place of business in Hartford, Connecticut. Travelers, therefore, is a citizen of Connecticut.

4. GDRB is a professional corporation organized and existing under the laws of Utah, and maintains its principal place of business in Utah. Therefore, GDRB is a citizen of Utah.

5. G&A is a professional corporation organized and existing under the laws of Utah, and maintains its principal place of business in Utah. Therefore, G&A is a citizen of Utah.

6. Grimmer is an individual who, upon information and belief, is domiciled in Utah. Grimmer, therefore, is a citizen of Utah.

7. Davis is an individual who, upon information and belief, is domiciled in Utah. Davis, therefore, is a citizen of Utah.

8.  Inman is an individual who, upon information and belief, is domiciled in Utah. Inman, therefore, is upon information and belief a citizen of Utah. Inman is named in this action as a nominal party whose interests may be affected by a judgment, and no affirmative relief is sought against her.

## JURISDICTION AND VENUE

9.  Federal subject matter jurisdiction exists in this action, pursuant to 28 U.S.C. § 1332, because it is an action between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the District of Utah because a substantial part of the events giving rise to Travelers' claim for declaratory relief occurred in this district.

## THE APPLICATION FOR PROFESSIONAL LIABILITY INSURANCE

11. GDRB submitted to Travelers a 1st Choice+ Lawyers Professional Liability Coverage Small Firm Application, dated April 18, 2019, and bearing Grimmer's signature (the "Application"), seeking renewal of a Travelers lawyers professional liability insurance policy that had expired on March 20, 2019. A true and correct copy of the Application is attached to this Complaint as **Exhibit 1**.

12. In the Application, GDRB answered "No" to the following question:

> Do you or any member or employee of your firm have knowledge of any incident, act, error, or omission that is or could be the basis of a claim under this proposed professional liability policy?

13. Immediately above Grimmer's signature, the Application states, in relevant part, as follows:

3

> The undersigned authorized representative of the firm, or individual if this application is for an individual, agrees to all of the following:
>
> - The statements and representations made in this application, all supplements and attachments to this application, are true and complete and will be deemed material to the acceptance of the risk assumed by Travelers in the event an insurance policy is issued.
>
> \* \* \*

14. On April 18, 2019, in connection with the Application, and at Travelers' request, GDRB provided Travelers with a letter, dated April 18, 2019 (the "No Known Circumstances Letter"), including the following statement:

> As of the date of this letter, we are not aware of any facts, circumstances or losses from the period of March 20, 2019 to the present as respects our lawyer's professional lawyers [sic].

A true and correct copy of the No Known Circumstances Letter is attached to this Complaint as **Exhibit 2**.

## THE INSURANCE POLICY

15. After receiving the Application and the Known Circumstances Letter, and in reliance on the statements and information contained in both documents, Travelers issued the Policy, which is a claims-made Travelers 1st Choice+ Lawyers Professional Liability Policy, No. 106892747.  At GDRB's request, Travelers agreed to "backdate" the inception date of the Policy so that its policy period is March 20, 2019 to March 20, 2020.  A true and correct copy of the Policy is attached as **Exhibit 3** and incorporated into this Complaint.

16. The Declarations included in the Policy lists the **Named Insured** as GDRB.

17. The Policy's limits of liability for "Professional Services" are $2,000,000 for each **Claim**, not to exceed $2,000,000 for all **Claims**, subject to the each **Claim** deductible of $2,500.

18. Pursuant to Form LPL-1001 Ed. 01-08, the Policy's Insuring Agreement states as follows:

> ### *I.     INSURING AGREEMENT*
>
> The Company will pay on behalf of the **Insured**, **Damages** and **Defense Expenses** for any **Claim** first made during the **Policy Period** that is caused by a **Wrongful Act** committed on or after any applicable Retroactive Date set forth in ITEM 5 of the Declarations, provided that no **Insured** on the Knowledge Date set forth in ITEM 5 of the Declarations had any basis to believe that such **Wrongful Act** might reasonably be expected to be the basis of a **Claim**.

### THE GRIMMER PARTIES' PRIOR KNOWLEDGE OF CIRCUMSTANCES

19. Beginning in 2012, and continuing through September 2017, G&A, Grimmer and Davis represented Inman and her brother, Walker Patterson Inman, III ("Patterson") in connection with a trust (the "WPI Trust") that was created, administered, and held real property and other assets in Wyoming. The legal services G&A, Grimmer and Davis provided to Inman and Patterson included representing them in consolidated litigation in the Third Judicial District Court, Lincoln County, Wyoming (the "Consolidated Trust Cases").

20. In September 2017, Grimmer, Davis & G&A withdrew as counsel of record for Inman in the Consolidated Trust Cases.

21. On June 27, 2018, Inman filed a Motion to Disqualify the Grimmer Parties from representing Patterson in the Consolidated Trust Cases, citing conflicts of interest and breaches of professional duties by the Grimmer Parties (the "Disqualification Motion"). A true and correct copy of the Disqualification Motion is attached to this Complaint as **Exhibit 4**.

22. In the Disqualification Motion, Inman alleged, among other things, that:

    a.    The engagement agreement between Inman and G&A made no mention of the joint representation of Inman and Patterson and provided no advisement on the risk of common representation or potential conflicts of interest. Ex. 4, p. 4;

      b.      Beginning in the middle of 2017, the interests and objectives of Inman and Patterson began to diverge, although Grimmer and Davis continued to represent both. Ex. 4, p. 4;

      c.      In August 2017, Inman, while still represented by Grimmer and Davis, signed a Disclaimer of Interest (the "Disclaimer") in which she purportedly declined an interest in purchasing property known as the "Greenfield Plantation", although it did not appear she received the advice of independent counsel and no consideration was paid to her for disclaiming her interest. Ex. 4, p. 5;

      d.      In September 2017, Grimmer presented the court in the Consolidated Trust Cases with an Assignment of Claims and Rights (the "Assignment"), in which Inman requested to be disassociated with the litigation, with no indication she was given independent counsel's advice, or consideration, Ex. 4, p. 5;

      e.      Inman had viable claims against "parties <u>and</u> <u>lawyers</u>" in the litigation, which she would be bringing to undo both the Greenfield Plantation sale and the Assignment, and Grimmer and Davis would "<u>have to defend themselves</u>". Ex. 4, p. 11 (emphasis added).

23.    On March 1, 2019, David B. Park, the Special Master appointed in the Consolidated Trust Cases (the "Special Master") issued a Report of Special Master on Motion to Disqualify Mathew Grimmer (the "Report"), which was filed with the court on March 5, 2019. A true and correct copy of the Report is attached to this Complaint as **Exhibit 5**.

24.    In the Report, the Special Master determined, among other things, that:

      a.      Grimmer did not obtain Inman's informed consent to his joint representation of Inman and Patterson, should have obtained independent counsel for both Inman and Patterson, and his joint representation of both was, therefore, improper. Ex. 5, p. 6;

      b.      It was improper for Grimmer to have forwarded Inman's Disclaimer, indicating her lack of interest in an offer for the sale of the Greenfield Plantation to Inman and Patterson, without Inman having the benefit of independent advice. Ex. 5, pp. 6-7;

      c.      It was improper for Grimmer to represent both Inman and Patterson while having Inman assign to Patterson her interest in the Consolidated Trust Cases litigation. Ex. 5, p. 7;

      d.      Despite the duty of loyalty Grimmer owed to Inman, Grimmer structured the Assignment and withdrawal documents so as not to harm Patterson's position, rather than in a way that would provide most benefit to Inman. Ex. 5, p. 11;

      e.      Having secretly recorded a discussion with Inman regarding the purchase of the Greenfield Plantation and Inman's withdrawal from the Consolidated Trust Cases, Grimmer used the confidential statement in a manner adverse to Inman's best interests. Ex. 5, pp. 10-11;

25. In light of his finding that Grimmer improperly represented both Inman and Patterson, to Inman's detriment, and that Grimmer's continued representation of Patterson was contrary to Inman's best interests, the Special Master recommended that Grimmer and Davis be disqualified from further representation in the Consolidated Trust Cases, that any member of any firm with which Grimmer was associated also be disqualified, and that Grimmer's *pro hac vice* admission be revoked.

26. On March 25, 2019, the court in the Consolidated Trust Cases entered an order pursuant to which the court accepted the Report and disqualified Grimmer, Davis and their firm from further representing any party in the matter (the "Disqualification Order"). In the Disqualification Order, the court found that the attorneys' conflicts (identified as violations of Rules 1.7 and 1.8, W.R.Pr.C.) and release or use of confidential information (in violation of Rule 1.7, W.R.Pr.C.) were detrimental to legitimate interests of parties other than Patterson (i.e. Inman).

27. By April 18, 2019, when GDRB completed and submitted the Application and the No Known Circumstances Letter, Grimmer and Davis were aware of the contents of the Report and the Disqualification Order, both containing findings that they had breached professional duties owed to their client, to her detriment. As of that date, they were also aware of the contents of the Disqualification Motion, which contained detailed allegations of wrongful conduct

7

attributed to Grimmer and Davis.  Grimmer and Davis were, therefore, aware, as of April 18, 2019, of incidents, acts, or omissions that could be the basis of a claim under the Policy.

## COUNT I
### (Rescission of Policy)

28. Travelers realleges paragraphs 1-27 above as if set forth fully as this paragraph 28.

29. The Application contained a misrepresentation, omission, concealment of facts, or incorrect statement in the negative response to the question whether any member of GDRB had knowledge of any incident, act or omission that could be the basis of a claim.

30. At the time GDRB completed the Application and submitted the No Known Circumstances Letter, Grimmer and Davis had knowledge of the Report and the Disqualification Order adopting the Report and disqualifying them as counsel for Patterson in the Consolidated Trust Cases, as well as the Disqualification Motion containing substantial accusations of wrongful conduct by Grimmer and Davis.

31. The Report (filed March 5, 2019), the Disqualification Order (filed March 25, 2019), and the underlying Disqualification Motion (filed June 27, 2018) identified incidents, acts, or omissions that were or could be the basis of a claim under the Policy.

32. Had Travelers been made aware of the information contained in the Report and the Disqualification Order when GDRB submitted the Application, Travelers would not have issued the Policy.

33. As a result of the material misrepresentation, omission, concealment of fact, or incorrect statement in connection with the Application, the Court should rescind the Policy and declare that there is no coverage for any claim made against GDRB or any other **Insured** under the Policy, including without limitation, the Inman Lawsuit.

34. Travelers is tendering to GDRB all amounts paid as premium for the Policy.

WHEREFORE, Travelers respectfully requests that the Court enter a judgment:

a. Declaring the Policy void;

b. Rescinding the Policy;

c. Declaring that Travelers has no duty to defend or indemnify the Grimmer Parties against the Inman Lawsuit or any other **Claim**; and

d. Granting such other relief as the Court may deem just and proper.

Dated:  August 26, 2019

**LITCHFIELD CAVO LLP**

By: /s/ Vincent J. Velardo
Vincent J. Velardo

and

Christopher J. Bannon
Nicole Miller
*Attorneys for Plaintiff Travelers Casualty and Surety Company of America*