IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**GRIMMER DAVIS REVELLI & BALLIF, P.C., et al., ,**<br><br>**Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:19-cv-597-DAK-JCB<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Jared C. Bennett |

This matter is before the court on Plaintiff Travelers Casualty and Surety Company of America's Motion for Summary Judgment [ECF No. 56]. On October 27, 2021, the court held a hearing on the motion by Zoom videoconferencing due to the Covid-19 pandemic. At the hearing, Christopher J. Bannon and Vincent J. Velardo represented Plaintiff, and Matthew G. Grimmer represented Defendants. The court took the motion under advisement. After carefully considering the memoranda filed by the parties and the law and facts relevant to the pending motion, the court issues the following Memorandum Decision and Order.

## BACKGROUND

Travelers issued a Lawyers Professional Liability Insurance Policy to Grimmer, Davis, Revelli & Ballif ("Grimmer Davis"). Grimmer Davis is a law firm with its principal place of business in Lehi, Utah. At all times relevant to this action, Defendant Matthew Grimmer was the sole shareholder of Grimmer Davis and had general managing and governing responsibilities at the firm. Grimmer is a licensed attorney with knowledge of the rules of professional conduct. Jacob

Davis was an employee of Grimmer Davis. Davis is also an attorney with knowledge of the rules of professional conduct. Defendant Grimmer and Associates, P.C.("G&A") is a law firm with its principal place of business in Lehi, Utah. G&A is located in the same office as Grimmer Davis. Grimmer is the sole shareholder of G&A, and Davis was also employed at G&A.

Georgia Noel Inman and her twin brother Walker Patterson Inman III ("Patterson") were clients or former clients of G&A and its attorneys. Patterson was also a client or former client of Grimmer Davis and its attorneys. Georgia and Patterson's father died when they were twelve years old. Their stepmother served as their deceased father's personal representative and successor trustee. However, there were allegations that she was pilfering or hiding assets from the estate. In 2013, Grimmer and G&A began representing Georgia and Patterson in the probate dispute with their stepmother in an action in Wyoming.

Grimmer and G&A's representation of Georgia ended in 2017, prior to his formation of Grimmer Davis in January 2018. It appears that Grimmer Davis started representing Patterson when it came into existence. Grimmer Davis, however, is not a successor firm to G&A. G&A continued to operate as a firm as well.

On June 27, 2018, Georgia filed a motion to disqualify the firm Grimmer Davis and the individual attorneys Grimmer and Davis from representing Patterson in the consolidated trust cases pending in Wyoming, citing various conflicts of interest and breaches of professional duties against Grimmer, Davis, G&A and Grimmer Davis ("Grimmer Parties"). In this disqualification motion, Georgia asserted that the Grimmer Parties advocated for positions that favored Patterson and were adverse to her interests. The motion states that "Georgia potentially has claims against parties and lawyers in this litigation" and "Georgia now has viable claims, which she will be bringing to undo both the Greenfield Plantation sale and the assignment of claims"—two

transactions involving Georgia, Patterson, and Grimmer.

Georgia also filed a supplement to the motion to disqualify on December 4, 2018, stating that she intended to seek leave to amend the pleadings to assert claims against "the Grimmer lawyers, as agents of Patterson, and against Patterson, for damages caused by the depletion of the Trust assets by Patterson's violation of the Trust's *In Terrorem* clause." Georgia also stated that she would seek "substantial" damages against Grimmer, Davis, and Grimmer Davis.

On December 13, 2018, Georgia filed another supplement to the Wyoming disqualification motion, stating that she would seek damages against "the Grimmer lawyers" for damaging trust property. Specifically, she stated that she would seek full enforcement of the *In Terrorem* clause against Patterson to preserve the Trust property "and damages against the Grimmer lawyers and Patterson for damaging the Trust property in violation of her father's wishes." Georgia filed an Affidavit in support of the December 13, 2018 Supplement, in which she testified: " I intend to bring claims against [the Grimmer lawyers] . . . for what they have done to me, and for what they have done to the WPI Trust on behalf of Patterson." Her Affidavit identified "the Grimmer lawyers" as "Matt Grimmer and various lawyers and others working for his law firms."

On January 22, 2019, Georgia's counsel emailed a letter addressed to Grimmer Davis, G&A, Grimmer, and Davis demanding their withdrawal from the consolidated trust cases in Wyoming and enclosing a draft Motion for Rule 11 Sanctions. In the Draft Sanctions Motion, Georgia requested sanctions against Grimmer Davis stemming from many of the same allegations asserted in the Wyoming disqualification motion. She also asked the Wyoming court to consolidate "all future complaints by Georgia against the Grimmer lawyers." The term "Grimmer lawyers" in the draft sanctions motion was defined as Grimmer Davis, G&A, Grimmer, and the other attorneys working at the two firms.

3

The Wyoming court appointed a Special Master in the consolidated trust cases, who issued a Report of Special Master on Georgia's Motion to Disqualify on March 5, 2019.  The Special Master determined that Grimmer did not obtain Georgia's informed consent to his joint representation of Georgia and Patterson, that Grimmer should have obtained independent counsel for both Georgia and Patterson, and that the joint representation was improper.  He also found that it was improper of Grimmer to represent both Georgia and Patterson while having Georgia assign to Patterson her interest in the consolidated trust cases litigation and for Grimmer to forward a disclaimer of interest in the Greenfield Plantation sale by Georgia to both Georgia and Patterson without Georgia having the benefit of independent advice.  Moreover, despite the duty of loyalty Grimmer owed to Georgia, the Special Master found that Grimmer structured assignments of rights and withdrawal documents so as not to harm Patterson's position rather than in a way that would provide benefit to Georgia.  The Special Master further found that Grimmer made an audio recording of Georgia and used her confidential statement to him in a manner adverse to her best interests.  Finally, the Special Master found that in refusing to pay sums due for the purchase of the Greenfield Plantation and in filing a counterclaim in related litigation in South Carolina, Grimmer was adverse to Georgia.

Based on these findings of improper joint representation and a conflict of interest in continuing to represent Patterson while being adverse to a former client, the Special Master recommended that Grimmer and Davis be disqualified from further representation in the consolidated trust cases and that any member of any firm with which Grimmer was associated also be disqualified.  He further recommended that Grimmer's *pro hac vice* admission be revoked.

On March 25, 2019, the Wyoming court accepted the Special Master's Report and disqualified Grimmer, Davis, and Grimmer Davis from further representing any party in the

Wyoming consolidated trust cases.

Georgia had also filed a motion to disqualify Grimmer Davis, Davis, and Phillip Ballif from representing Patterson in trust litigation in South Carolina due to alleged breaches of duties to Georgia as a former client. G&A was not a counsel of record in the South Carolina case. On December 13, 2018, the South Carolina court disqualified Grimmer Davis, Davis, and Ballif based on violations of the South Carolina Rules of Professional Conduct. The South Carolina court found that a material adversity existed between Grimmer, who at that time was the trustee of a trust holding assets for Patterson as the sole beneficiary, Patterson, and Georgia.

Travelers had initially provided professional liability insurance coverage to Grimmer Davis for the policy period of March 20, 2018 to March 20, 2019. At the conclusion of that policy period, Grimmer Davis failed to submit a renewal application and the 2018 policy expired. Travelers did not automatically renew Grimmer Davis' coverage.

However, in April 2019, Grimmer Davis requested that Travelers issue a new policy to provide coverage retroactive to March 20, 2019, the 2018 policy's expiration date. Grimmer Davis submitted an application for insurance, dated April 18, 2019, which Grimmer signed on behalf of Grimmer Davis. In response to Question 27 on the application, asking whether "you or any member or employee of your firm have knowledge of any incident, act, error, or omission that is or could be the basis of a claim under this proposed professional liability policy," Grimmer Davis answered "No."

Also, immediately above Grimmer's signature, the application stated that Grimmer agreed that the representations made in the application were "true and complete and will be deemed material to the acceptance of the risk assumed by Travelers in the event an insurance policy is issued." Grimmer also agreed to immediately inform Travelers if any of the information supplied

5

in the application changed between the date of the application and the effective date of any insurance policy Travelers issued in response to the application.  If Grimmer provided any changed information, the application allowed Travelers to "withdraw or modify any outstanding quotation or agreement to bind coverage."

In order to evaluate Grimmer Davis' request for a renewal policy with a retroactive effective date of March 20, 2019, Travelers required Grimmer Davis to provide a letter confirming that its attorneys were not aware of any facts or circumstances after March 20, 2019, that may give rise to a claim under the renewal policy. Grimmer Davis provided Travelers with a letter, dated April 18, 2019 ("No Known Circumstances Letter"), stating, in part, that "[a]s of the date of this letter, we are not aware of any facts, circumstances, or losses from the period of March 20, 2019 to the present as respects our lawyers' professional lawyers insurance."

Kristin Montalvo, the Travelers underwriter responsible for Grimmer Davis' account, reviewed the application and letter to evaluate the risk of insuring Grimmer Davis.  She provided Grimmer Davis with a quote and Grimmer Davis accepted.  On April 19, 2019, Travelers issued to Grimmer Davis a Travelers 1st Choice+ Lawyers Professional Liability Coverage insurance policy, effective March 20, 2019 to March 20, 2020.

A week later, on April 25, 2019, Georgia asserted a malpractice claim against Grimmer Davis, G&A, Grimmer, and Davis based on their prior representation of her. Georgia's attorney sent a letter to Grimmer Davis advising the firm of Georgia's malpractice claim and instructing the firm to forward her claim to the firm's malpractice insurance carrier(s).  Grimmer Davis notified Travelers of Georgia's claim on May 17, 2019.  On June 10, 2019, Georgia filed suit against Grimmer Davis, G&A, Grimmer, and Davis in state court in Wyoming, alleging legal malpractice and breaches of duties.

Montalvo, Travelers' underwriter, testified in an Affidavit that if Grimmer Davis had disclosed Georgia's various claims and assertions against the Grimmer attorneys in the Wyoming and South Carolina actions, as well as those court's findings regarding ethical violations, Travelers would not have issued the renewal policy.   In addition, she testified that if Grimmer Davis had not submitted the No Known Circumstances letter affirming its and its attorneys' lack of knowledge as to any facts or circumstances relating to any potential claims or losses, Travelers would not have issued the renewal policy.

On August 26, 2019, Travelers notified Grimmer Davis that it sought rescission of the policy and that it would return the premium the firm had paid for the policy.   That same day, Travelers filed the instant lawsuit in this court.   On August 30, 2019, Travelers sent Grimmer Davis a $11,900 check, representing the amount Travelers had received from Grimmer Davis as premium for the policy.

## DISCUSSION

### Travelers' Motion for Summary Judgment

Travelers moves for summary judgment, asking this court to rescind the insurance policy and to declare that the policy is void and that Travelers has no duty under the policy to defend or indemnify Defendants.   Specifically, Travelers argues that the court should rescind the policy because Grimmer Davis made material misrepresentations in procuring the policy, Grimmer knowingly misrepresented his awareness of threatened claims and other information when he filled out the Application for the policy renewal and wrote the No Known Circumstances letter, and Travelers relied on Grimmer's material misrepresentations and omissions, which affected the risk Travelers assumed in issuing the Policy.

Utah law provides for rescission of insurance policies in three circumstances.   Utah Code

Annotated Section 31A-21-105(2) governs rescission and provides that "no misrepresentation . . . affects the insurer's obligations under the policy unless: (a) the insurer relies on it and it is either material or is made with intent to deceive; or (b) the fact misrepresented or falsely warranted contributes to the loss." Courts applying this statute have held that an insurer may rescind a policy where "(1) the insurer relies on a material misrepresentation made by the applicant; (2) the insurer relies on a misrepresentation that was made by the applicant with the intent to deceive; or (3) the applicant's misrepresentation contributes to the loss." *Derbridge v. Mutual Protective Ins. Co.*, 963 P.2d 788, 790-91 (Utah Ct. App. 1998). An insurer need only satisfy one of the justifications for rescission to rescind a policy. *Berger v. Minnesota Mut. Life Ins. Co. of St. Paul, Minn.*, 723 P.2d 388, 390 (Utah 1986). Travelers, however, claims that it is entitled to rescind the policy under all three of those justifications.

A misrepresentation occurs where an applicant for insurance "knows or should have known about a misstatement in the application and still presents it to the insurer." *ClearOne Communications, Inc. v. Ntl. Union Fire Ins. Co. of Pittsburgh*, 494 F.3d 1238, 1247-48 (10th Cir. 2007). To constitute a "misrepresentation" for purposes of the statute, it is not necessary for the insured's statement to have been made with the intent to deceive, but the insured "must have at least some knowledge or awareness of [its] misstatement." *Derbridge*, 963 P.2d at 794.

Here, Grimmer acted on behalf of Davis Grimmer and attested in the application and the No Known Circumstances letter that no one at the firm was aware of any facts, circumstances, or losses that could impact coverage under the policy. However, at the time Grimmer signed those documents, Georgia Inman had already repeatedly threatened substantial claims against the firm and its attorneys, and two courts had already determined that the attorneys' conduct was improper and breached professional obligations to a former client.

Defendants, however, argue that the misrepresentation condition in the policy should govern this issue rather than Utah law on rescission. But the policy was not in existence when Grimmer made his misrepresentations. The misrepresentation condition in Paragraph XIX of the policy specifically states that it applies after the inception date of the policy period. It applies to conduct occurring after a policy has been issued as opposed to the policy application process. The information given to the insurance company during the application process is governed by the above-discussed Utah law. Here, the information Grimmer gave or failed to give Travelers occurred before Travelers agreed to issue the policy. Although the policy's inception date was backdated to pre-date the Application, Travelers only agreed to backdate the policy because of Grimmer's misrepresentations and material omissions. The inception date of the policy, which was obtained as a direct result of misrepresentations and material omissions, does not require that the terms of the policy apply to the issue. The more applicable law in this situation is Utah's rescission statute.

The doctrine of equitable estoppel also operates to bar the Grimmer parties from claiming that the misrepresentation condition of the policy takes precedence over Utah's rescission statute. Utah courts have recognized that the doctrine of equitable estoppel will prevent a party from taking advantage of misrepresentations made in the insurance context. *Youngblood v. Auto-Owner Ins. Co.*, 158 P.3d 1088, 1092 (Utah 2007). "Equitable estoppel may be invoked to prevent injustice where one has reasonably relied to his or her detriment on an intentional or negligent false representation by another." *Barnard v. Barnard*, 700 P.2d 1113, 1115 (Utah 1985).

All the elements for equitable estoppel are met here. Grimmer made untrue statements and omitted material information to obtain a policy with a backdated inception date. Travelers relied on those misrepresentations and agreed to issue the policy with a backdated inception date.

Now, Grimmer seeks application of the policy's misrepresentation condition provision which is meant to apply to conduct after the policy is in place instead of Utah law that applies in the application process. If the court were to find that the policy's misrepresentation condition applied and that the misrepresentations were not intentional, Travelers would be prejudiced by the use of the policy's rescission standard which is a higher standard than the statutory standard. Equitable estoppel, therefore, applies to prevent that kind of inequitable result.

But even if the policy's misrepresentation condition applies, Travelers is entitled to rescission because Grimmer intentionally concealed material facts. Grimmer is a principal insured under the policy—he was and is the sole shareholder of the firm. And he intentionally concealed or misrepresented material facts concerning the insurance. The undisputed evidence demonstrates that Grimmer knew or should have known that the information he provided to Travelers was false and given with the intent to obtain the insurance policy. Intent to deceive can be inferred from circumstantial evidence. *Republic Group, Inc. v. Won-Door Corp.*, 883 P.2d 285, 293 n.7 (Utah Ct. App. 1994). In this case, Grimmer had threats from Georgia Inman that she would bring any claims possible against the firms and attorneys. A few weeks before applying for the renewal policy, the Wyoming court issued a ruling in favor of Georgia. That ruling was issued five days after the prior policy expired. Grimmer knew or should have known that he and his firm needed insurance coverage. However, when he applied for that insurance coverage and asked for it to apply retroactively, he did not mention any of these material circumstances to Travelers. He knew or should have known that Travelers was concerned about this kind of information when they asked for a separate letter. Nonetheless, he did not disclose the information.

Defendants further assert that Grimmer Davis did not make a misrepresentation when it

answered "no" to Question 27 on the Application for insurance because Question 27 asks about knowledge of an act that "could be the basis of a claim under the proposed professional liability policy" and Georgia's threatened claims pertained to G&A's representation of her.  Grimmer Davis never represented Georgia.  Defendants also argue that Georgia's allegations cannot be the basis for a claim under the Grimmer Davis policy because Georgia's allegations described acts occurring while Grimmer and Davis were acting for G&A, not Grimmer Davis.

      A "claim" under the Grimmer Davis policy requires that Georgia make allegations "against any Insured" for a "Wrongful Act."  The definition of "Insured" includes an "Insured Person" or a "Named Insured."  The Named Insured under the policy is Grimmer Davis and an Insured Person may include Matthew Grimmer, because he is the sole owner of the Grimmer Davis firm, but only if Georgia's allegations against him arise from him "acting within the scope of [his] duties on behalf of the Named Insured."  A "wrongful act" under the policy includes any actual or alleged conduct by either the Named Insured—Grimmer Davis—or by any Insured—Matthew Grimmer—but only if the alleged act was performed by either the firm or Grimmer "while acting within the scope of their duties on behalf of the Named Insured"—Grimmer Davis.

      However, Defendants' reliance on the fact that Georgia was only represented by Grimmer and Davis at G&A is misplaced.  Defendants ignore the fact that Georgia asserted on numerous occasions that she planned to bring claims against Grimmer Davis and attorneys working at the firm.  Grimmer Davis began representing Patterson in early 2018, shortly after the firm was formed and during the course of the Wyoming litigation.  Georgia made complaints relating to Grimmer Davis' ongoing representation of Patterson, the alleged resulting damages to assets owned by a trust to which Georgia is a beneficiary, and their obligations to her as a former client. Defendants contend that Georgia's claims against Grimmer Davis can simply be attributed to

11

Georgia's confusion as to the firms' names. She did admit to some confusion as to the relationship of the two firms, but she also made clear she was seeking disqualification of Grimmer, Davis and both firms specifically. She repeatedly referred to "firms" in the plural, as did the courts. There is no genuine dispute as to whether Georgia threatened claims against Grimmer Davis and its members relating to conduct that occurred after she was represented by G&A.

Under the terms of the policy, a "Claim" is a demand for "money or services" against an "Insured" for a "Wrongful Act." Georgia claimed that the damages to the trust was in March 2018, after Grimmer Davis was formed. Georgia repeatedly made such claims stemming from Grimmer Davis' representation of Patterson in 2018 after Grimmer Davis was formed and representing Patterson. Grimmer does not allege that he was unaware of Georgia's claims and assertions.

The Special Master's Report and the Wyoming Court's Order clearly dealt with both firms. They also referred to facts relating to joint representation and subsequent representation. The South Carolina motion and resulting order also provide the basis for a claim under the policy. Defendants claim that the South Carolina order only identified possible future events, but the order sided with Georgia and found that Grimmer Davis was in violation of various rules of professional conduct. Georgia had complained about ongoing conduct—Grimmer Davis improperly representing Grimmer and the trust and withholding payments to her—that could lead to a demand for money or services against Grimmer Davis for its role in providing legal representation to Patterson and the trust. The only Grimmer law firm involved in the South Carolina litigation was Grimmer Davis, not G&A. Grimmer, therefore, knew that Georgia's claims were not only against him in his role with G&A.

And, even if Georgia's claims against Grimmer Davis had proved to be unmeritorious, it

was clear that she intended to bring them and bring them against Grimmer Davis, Grimmer, and Davis. It does not matter whether she alleged a valid claim, only that she was threatening to bring claims. Whether or not the claims were ultimately successful, the evidence undeniably demonstrates that Georgia specifically identified Grimmer Davis on numerous occasions as a party against whom she intended to assert a claim. Based on that fact alone, Grimmer was aware that she intended to bring claims against Grimmer Davis when he completed the Application for renewal of the insurance and the No Known Circumstances letter.

Grimmer either knew or should have known that the information he provided Travelers was false. The communications from Georgia, her court filings, the courts' rulings, and Georgia's specific threats to bring any claims she could against the attorneys and firms are sufficient to show that Grimmer had knowledge of circumstances that could lead to a claim under the Grimmer Davis policy.

Defendants argue that Travelers has taken inconsistent positions on whether Georgia has stated claims under the policy and Travelers should be estopped from taking these positions. Travelers determined under the policy that all allegations or acts arising under the G&A firm fall outside the Grimmer Davis policy coverage. Yet, Defendants claim that when Grimmer Davis determined that Georgia's claims arose under the G&A firm, and used that determination to answer the Application, Travelers contends that this conduct is a misrepresentation. But Travelers denied coverage for acts committed by G&A because it is not an Insured under the policy. It is Grimmer, not Travelers, who contends that Georgia's allegations concern only G&A. Travelers has consistently acknowledged that Georgia has asserted claims against Grimmer, Davis, Grimmer Davis, and G&A—not just G&A and Grimmer and Davis in their roles at G&A but also Grimmer Davis and Grimmer and Davis in their roles at Grimmer Davis. Travelers

13

contends that Grimmer misrepresented the existence of Georgia's threats and claims. Whether there is coverage for all of those threats and claims is separate from whether Grimmer properly disclosed the existence of the threats and claims. There is nothing inconsistent in Travelers' position and no basis for Defendants' estoppel argument.

Furthermore, Grimmer's representations to Travelers were material because Travelers relied on them in issuing the renewal policy and they contributed to the loss. "A fact is material to the risk assumed by an insurance company if reasonable insurers would regard the fact as one which substantially increases the chance that the risk insured against will happen and therefore would reject the application." *ClearOne Communications,* 494 F.3d at 1249-50. If a fact would "naturally influence the insurer's judgment in making the contract, estimating the degree or character of the risk, or in fixing the rate of insurance," then it is material. *Fidelity & Cas. Co. v. Middlemiss*, 135 P.2d 275, 279 (Utah 1943).

Travelers submitted the sworn testimony of its underwriter stating that she relied on Grimmer's answers in the application and representations in the No Known Circumstances letter and that Travelers would not have issued the policy had Grimmer Davis disclosed Georgia's threatened claims and the courts' decisions. Before agreeing to issue a renewal policy and making it retroactive to the date of the prior policy, Travelers took the additional step of requesting a No Known Circumstances letter to confirm that no firm attorney had recently learned of any claims. The Wyoming court had entered its order only five days after Grimmer Davis' prior policy expired and a few weeks before Grimmer submitted the letter seeking a retroactive renewal of the policy. Grimmer would have known these facts when he was dealing with Travelers but failed to inform Travelers of any of it. Travelers would not have issued the policy if it had known these circumstances that Grimmer failed to provide. Travelers provided evidence that repeated

threats and adverse judicial decisions are incidents that an underwriter considers material because they increase the risk of claims and increase the risk to the insurer. Defendants present no evidence to dispute Travelers' position on reliance or materiality.

Defendants do not assert a material disputed fact that would prevent this court from entering summary judgment. Even if Georgia Inman erroneously made claims against Grimmer Davis, and Grimmer and Davis in their roles at Grimmer Davis, Grimmer Davis should have disclosed the existence of those claims to Travelers when it was pursuing the renewal policy. Those claims were material and Travelers relied on Grimmer Davis' assertions that there were no such claims in issuing the policy renewal. Grimmer knew of the claims and did not disclose them. The court, therefore, concludes that Defendants made misrepresentations to Travelers, Travelers relied on those misrepresentations, and those misrepresentations were material to Traveler's decision to provide insurance.

Accordingly, the court concludes that Travelers is entitled to rescind the policy under Utah law. The court further declares that the policy is void and Travelers has no duty to defend or indemnify Defendants under the policy. Therefore, the court grants Traveler's motion for summary judgment.

## CONCLUSION

Based on the above reasoning, Plaintiff Travelers Casualty and Surety Company of America's Motion for Summary Judgment [ECF No. 56] is GRANTED.

DATED this 10th day of November, 2021.

BY THE COURT:

DALE A. KIMBALL,
UNITED STATES DISTRICT JUDGE